UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: | CASE NO. 08-21359 |
| LANA M. OCHS and JOSEPH J. OCHS, | |
| DEBTORS | CHAPTER 7 |
| LINDA MICHALEK, | |
| PLAINTIFF | ADV. PRO. NO. 09-2046 |
| v. | RE: ECF NO. 1 |
| LANA M. OCHS and JOSEPH J. OCHS, | |
| DEFENDANTS | |

APPEARANCES:

Derek V. Oatis, Esq.                              Attorney for Plaintiff
Lobo & Novak LLP
280 Adams Street,
Manchester, CT 06042

Peter L. Lawrence, Esq.                        Attorney for Defendant-Debtors
Lawrence & Jurkiewicz LLC
486 East Main Street,
Torrington, CT 06790

**MEMORANDUM OF DECISION ON COMPLAINT
TO DETERMINE DISCHARGEABILITY OF DEBT**

ALBERT S. DABROWSKI, United States Bankruptcy Judge

## I. INTRODUCTION

Lana M. Ochs and Joseph J. Ochs (hereinafter, the "Debtors") commenced the captioned bankruptcy case on July 18, 2008 by filing a voluntary petition under Chapter 11 of the Bankruptcy Code. By motion filed April 1, 2009, the Debtors, in accordance with 11 U.S.C §1112(a), sought to convert their Chapter 11 case to a case under Chapter 7, and the Case was so converted by Order dated April 6, 2009. The Debtors received a discharge on July 24, 2009.

Linda Michalek (hereinafter, the "Plaintiff"), on July 28, 2009, commenced the captioned adversary proceeding against the Debtors by filing a complaint (hereinafter, the "Complaint") seeking to except a debt owed to her from the Debtors' discharge under §523(a)(2)(A)[1].

The Complaint came before the Court for trial on November 18, 2013 at which the Court received both documentary and testimonial evidence. Thereafter, the parties filed simultaneous memoranda of law and reply memoranda in support of their respective positions.

## II. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. §1334(b); and this Court derives

---

[1] The Complaint does not particularize whether relief is sought under §523(a)(2)(A) or (B). However, subsection (B) by its terms is implicated only for statements "in writing . . . respecting the debtor's . . . financial condition". *See, e.g., Bellco First Federal Credit Union v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1362 (10th Cir. 1997); *cf., Field v. Mans*, 516 U.S. 59, 66, 116 S.Ct. 437, 441 (1995) (discussing relationship of subsections (a)(2)(A) and (B)). The Plaintiff here made no allegation, and did not argue or offer proof, that any of the allegedly offending statements were in writing or involved the Debtor's' financial condition.

2

its authority to hear and determine this proceeding on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1) and the District Court's General Order of Reference dated September 21, 1984. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I).

### III.   BACKGROUND

The Plaintiff was the owner of two adjacent parcels of real property: one parcel consisted of approximately six acres of land with a single-family residence (hereinafter, the "House"); the second parcel was an 11.2 acre lot with a horse barn and riding arena (hereinafter, the "Horse Farm").

Following several months of negotiations, the Debtors, on January 31, 2003, purchased both the House and the Horse Farm from the Plaintiff for a total of $1,045,000. The Debtors financed the purchase of the House with a traditional third-party mortgage. The Plaintiff agreed to hold a short term $350,000 purchase money mortgage (hereinafter, the "Mortgage") on the Horse Farm under which the Debtors would make six monthly payments followed by a balloon payment.

In the months following the closing, the Plaintiff and the Debtors developed a friendship. The Plaintiff, who had boarded horses and given riding lessons at the Horse Farm for nine years, helped the Debtors learn the business. After four months, however, the parties had a falling-out and the Debtors defaulted on the Mortgage.

The Debtors assert that in seeking financing for the upcoming balloon payment under the Mortgage they discovered "zoning issues" with the Horse Farm: that one of the buildings was located too close to the property line between the House and the Horse Farm; and that a special permit was required to operate a commercial horse farm. The

Debtors further assert that, on advice of counsel, they stopped operating the Horse Farm commercially, and they were unable to obtain the financing necessary to make the balloon payment under the Mortgage.

Following the Debtors' default, the Plaintiff brought a state court foreclosure action (hereinafter, the "State Court Action") against the Debtors in which the Debtors asserted affirmative defenses based upon the Plaintiff's nondisclosure of the potential zoning issues. The state trial court entered a judgment of foreclosure, but reduced the amount of the debt on grounds that the Plaintiff's nondisclosure of certain conversations with the Zoning Enforcement Officer constituted negligent or innocent misrepresentations. *Johnnycake Mtn. Assoc. v. Ochs*, 2006 WL 538109 (Conn. Super. 2006). However, the state appellate court, finding that the Plaintiff did not have a duty to disclose those conversations, reversed as to the state trial court's monetary reductions for nondisclosure thereof, *Johnnycake Mtn. Assoc. v. Ochs*, 104 Conn.App. 194 (Conn. App. 2007), finding that:

(1)  Plaintiff adequately disclosed the setback issue and was not required to disclose her conversations with the Zoning Enforcement Officer concerning possible solutions; and

(2)  Because Plaintiff had a good faith belief that a special permit was not required to operate the Horse Farm, she had no obligation to disclose to the Debtors that applicable zoning regulations could be construed to require one.

### IV.  DISCUSSION

**A.  *The Doctrine of Collateral Estoppel is Not Applicable in this Proceeding.***

The Plaintiff focuses much of her argument on the doctrine of collateral estoppel arguing that certain findings in the State Court Action are not subject to relitigation before this Court. For the reasons set forth hereinafter, the Court finds this argument inapposite

to the present proceeding.

"[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered. *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896 (1984). Under Connecticut law:

> Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim. For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment.
>
> An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. If . . . the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action.

*Jackson v. R.G. Whipple*, 225 Conn. 705, 714-15 (1993) (citations, quotation marks and emphases omitted).

The issues raised and determined in the State Court Action concerned the validity of the Mortgage. In the State Court Action, the Debtors had asserted, as an affirmative defense, that the Plaintiff had an obligation to disclose certain zoning matters prior to the closing, that she failed to do so, and that such alleged nondisclosure constituted a fraudulent misrepresentation, rendering the Mortgage unenforceable. The state court finally determined that the Plaintiff did not make fraudulent misrepresentations to the Debtors; the Mortgage therefore was held to be valid and enforceable.

The issue in the present proceeding is whether the unsecured portion[2] of the Plaintiff's claim is excepted from the Debtors' discharge under §523(a)(2)(A). The Plaintiff argues that: "Having had their previous assertion that they were the victims of *fraud by the Plaintiffs* [sic] addressed thoroughly and held not credible, the Defendants now simply seek to 'try again' on the very same issue." Plaintiff's Reply Brief, ECF No. 76 at 6 (emphasis added). However, whereas the State Court Action, as the Plaintiff notes, concerned whether the *Plaintiff* made fraudulent misrepresentations *to the Debtors*, the present proceeding concerns whether the *Debtors*, prior to the closing, made fraudulent misrepresentations *to the Plaintiff*. In the State Court Action there were no factual findings as to the latter. Thus, as the issues determined in the State Court Action are completely different from the issues in the proceeding before this Court, the doctrine of collateral estoppel is not applicable.

## B.     *Section 523(a)(2)(A)*

Section 523(a)(2)(A) excepts from discharge "any debt . . . for money [or] property to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

> Under § 523(a)(2)(A), a debt may be determined nondischargeable based on fraud where the creditor proves that: (1) the debtor made the representations; (2) at the time he knew they were false; (3) he made them with the intention and purpose of deceiving the creditor; (4) the creditor relied on such representations; (5) the creditor sustained the alleged loss and damage as the proximate result of the representation having been made. The level of reliance is justifiable reliance. The burden of proof on the creditor is to prove each element of the statute by a preponderance of the evidence. Further, exceptions to dischargeability are narrowly construed, an

---

[2]  The Plaintiff's *in rem* claim against the property remains; the present proceeding affects only whether the Plaintiff's *in personam* claim against the Debtors for a deficiency judgment in the state court foreclosure action is dischargeable.

approach that implements the fresh start policy of the Bankruptcy Code. To be actionable, the debtor's conduct must involve moral turpitude or intentional wrong; mere negligence, poor business judgment or fraud implied in law (which may exist without imputation of bad faith or immorality) is insufficient.

*AT&T Universal Card Services Corp. v. Williams* ( *In re Williams*), 214 B.R. 433, 435 (Bankr. D.Conn.1997) (Internal quotation marks and citations omitted).

Because the Debtors obtained the property at the closing on January 31, 2003 (hereinafter, the "Closing Date"), the Plaintiff must show that the Debtors knowingly made a fraudulent misrepresentation, or perpetrated an "actual fraud" on or before such date.

As a basis for a determination of nondischargeability pursuant to §523(a)(2)(A) the Complaint alleges that the Debtors, on or before the Closing Date, made two specific false representations upon which the Plaintiff relied:

1. "that they had a third party who stood ready, willing and able to buy the Rock Road property from the Plaintiff within 90 days after the Plaintiff purchased Rock Road from the Debtors," Complaint ¶7[3], and

2. "that they would operate the Horse Farm as a business and use the proceeds from its operation towards payment on the $350,000 purchase money mortgage note." *Id.* ¶8.

As to the allegation that the Debtors falsely represented to the Plaintiff the existence of a third party "who stood ready, willing and able to buy" the Rock Road property, the Plaintiff presented no credible evidence to support that claim and appears to have abandoned it by her failure to address it in her post-trial briefs. Moreover, while a *potential* third party buyer apparently existed, that "buyer", as evidenced, *inter alia,* by the Plaintiff's own testimony was a far cry from a "ready, willing and able buyer", and was not

---

[3] The Complaint alleged that the "Debtors represented to Plaintiff they would purchase the House and Horse Farm if [*inter alia*] Plaintiff purchased other real property owned by the Debtors, known as 123 Rock Road, Burlington, Connecticut ("Rock Road"). Complaint ¶7.

represented as such by the Debtors.

The Debtors did represent on and/or prior to the Closing Date that they intended to operate the property as a horse farm and that they intended to make the payments under the Mortgage. It is significant, however, that the Debtors, for a number of months following the Closing Date, continued, with the Plaintiff's assistance, to operate the property as a horse farm. During that post-Closing Date period they also made the monthly Mortgage payments to the Plaintiff and actively sought to obtain refinancing in order to pay off the six month balloon payment under the Mortgage. Such conduct controverts the Plaintiff's claim that the Debtors, at or before the Closing Date had no intention of operating the Horse Farm, or making the Mortgage payments.

The Court finds credible the Debtors' testimony that they were unable to obtain the necessary financing due to certain zoning issues that had not previously presented any problems. In making this determination the Court is fully cognizant of the fact that in the State Court Action it was determined that the Plaintiff adequately disclosed that certain structures on the Horse Farm were in violation of a 100 foot setback requirement and that such non-compliance was not likely to be a problem for the Debtors because they also owned the adjacent House property. However, a third-party lender with a note secured only by a mortgage on the Horse Farm would not have the advantages of an adjacent landowner and might well see the setback requirement as a serious obstacle. Similarly, a potential problem concerning the need for a special permit might also deter a lender.

The Court finds that the evidence supports the Debtors' position that their statements and representations to the Plaintiff that they intended to operate the Horse Farm and make the payments on the Mortgage were truthful; and that their eventual failure

8

to do so was in response to post-Closing Date events: their inability to obtain the necessary financing; the loss of the Plaintiff's tutelage; and their belief that the operation of the Horse Farm was in violation of the zoning regulations.

In short, the Plaintiff has not satisfied her burden to prove that the Debtors' statements that they intended to operate the property as a horse farm, and that they intended to make the payments under the Mortgage, were false at the time such representations were made, as is required to except a debt from discharge under §523(a)(2)(A).

## C. Allegations of Actual Fraud on the Part of the Debtors.

Following the Trial, the Plaintiff asserted a new theory for relief also pursuant to §523(a)(2)(A), but not alleged in the Complaint, for an "actual fraud" asserting, in her own words, *inter alia*:

> [The Plaintiff's] general assertion, based upon the representations made by the Ochs prior to closing, is that representations made *by her to the Ochs*', the course of conduct of the 'negotiations' that progressively placed Ms. Michalek in a worse position and allowed the Ochs to ultimately purchase the horse farm for significantly less than Ms. Michalek intended to receive, and the Ochs conduct *subsequent to the closing* and making no effort whatsoever to actually address the alleged zoning violation, evidences that the Ochs, or at least Ms. Ochs, made misrepresentations relied upon by Ms. Michalek to her detriment precludes discharge.

Plaintiff's Trial Brief at 8,[4] ECF No. 73 (emphasis added).[5]

> Simply put, Ms. Ochs negotiated a sale that allowed her to purchase the residential property at a price far lower than ever contemplated by Ms.

---

[4] Pages in the Plaintiff's Trial Brief are not numbered.

[5] As discussed in Parts IV(A) and (B), *supra*, neither representations made by the Plaintiff to the Debtor, nor the Debtors' post-closing inaction concerning potential zoning issues, which the Plaintiff had advised them were not a problem, support the Plaintiff's position that the Debtors fraudulently induced her to sell them the property.

> Michalek and increased the price of the horse farm property to a price beyond what any of the parties believed was a fair representation of the value. Ms. Ochs kept Ms. Michalek's disclosure regarding "zoning issues" as an 'ace in her sleeve' to be hidden from everyone, including her attorneys, until it was in her interest to bring the "zoning issue" in to play. While the Defendants have not admitted their intent to deceive, the pretense of the "zoning issue", or their larger scheme to defraud Ms. Michalek, they have also not provided any rational explanation of their misrepresentations . . .

*Id.* at 9.

Against the background of the above "assertions of fraud", the Plaintiff cites *Hudson Valley Water Res., Inc. v. Boice (In re Boice)*, 149 B.R. 40, 47 (Bankr. S.D.N.Y. 1992):

> Proving the element of deceptive intent . . . is often difficult, as one will rarely admit to such intent. It is virtually impossible to obtain direct proof of one's intent . . . . Few will admit to a fraudulent intent . . . . Nevertheless, the "fundamental purpose" of this element is "to assure that only the debtor who dishonestly obtains money, property, credit, or services be punished with denial of discharge, and that the honest, though mistaken, debtor be protected." The debtor's unsupported assertions of an honest intent will not overcome the natural inferences from admitted facts. *Intent to deceive may be inferred when the totality of the circumstances depicts deceptive conduct by the debtor.*

*Id.* (emphasis added).

Fatal to the Plaintiff's assertion of an "actual fraud" perpetrated upon her by the Debtors and her request for a determination of nondischaregability as to the relevant debt is the Court's determination that those assertions are speculative at best, and that the totality of the circumstances presented in this proceeding does not depict deceptive conduct by the Debtors.

## V.    CONCLUSION

In accordance with the forgoing discussion, the Court concludes that the Plaintiff has not met her burden of proof as to the requirements for an exception to discharge under §523(a)(2)(A).

Judgment shall enter in favor of the Debtors that the unsecured portion of the Plaintiff's claim is subject to the Debtors' discharge.

Dated: September 17, 2014                                                  BY THE COURT

*Albert S. Dabrowski*
Albert S. Dabrowski
United States Bankruptcy Judge